Argued May 23, decided June 22, 1911.

## LEE TUNG v. BURKHART.

[116 Pac. 1066.]

TROVER AND CONVERSION—WHAT CONSTITUTES.

1. Defendant, the owner of a building, having been ordered by the municipal authorities to remove the building because it was unsafe, requested her tenants to remove their goods, and on their refusal to do so took possession of the goods and transferred them to a warehouse and delivered a duplicate of the warehouse receipt to the tenants' attorney, requesting that it be delivered to the tenants. The duplicate receipt was

not indorsed by the defendant. The receipt recited that the goods had been received from defendant "act," followed by the tenants' names. *Held,* that defendant was not liable for a conversion of the goods.

TROVER AND CONVERSION—WHAT CONSTITUTES.

2. It is not necessary to a conversion that there should be a manual taking of the thing in question.

TROVER AND CONVERSION—WHAT CONSTITUTES.

3. In order to maintain an action for conversion, there must have been, on the part of the defendant, some unlawful assumption of dominion over the personal property involved, in defiance or exclusion of the plaintiff's rights, or else a withholding of the possession under a claim of right or title inconsistent with that of plaintiff.

TROVER AND CONVERSION—WHAT CONSTITUTES.

4. In trover it is not enough that the facts show a trespass, it not being a conversion, unless defendant's dominion is a denial or a repudiation of the owner's right or title.

TRESPASS—DAMAGES.

5. In actions in the nature of trespass or case for misfeasance, plaintiff recovers only the damages suffered by the wrongful acts of defendant.

TROVER AND CONVERSION—DAMAGES.

6. In trover the general rule of damages is the value of the property at the time of conversion, diminished, when the property has been returned, by the value of the property at the time of return.

APPEAL AND ERROR—REVIEW—RECORD—EVIDENCE.

7. Where a case was tried on the issue of conversion by defendant, and the trial court did not find or assess any actual damages, and there was no evidence concerning the same before the appellate court, error could not be presumed in the failure of the court to award damages for trespass, though Section 1, L. O. L., abolishes distinctions between forms of actions.

From Multnomah:   EARL C. BRONAUGH, Judge.

Statement by MR. JUSTICE BEAN.

This is an action by Lee Tung, Lee Tai Ming, Sun Lee Yick, Lee Quon, Lee Yin Soon, Lee Hang, Kong, Lee Chung, Lee Fun, Lee Suey, Lee Lock, Lee Fow Ming, Lee See, Lee Lung You, Lee Kee, Lee How, Lee Sing Fay, Lee Tim Ming, Lee Yuen Man, Lee Dik, Ah Yick, Lee Sing Young and Lee Art, partners doing business as Hung Sun & Co., against Cornelia Burkhart for the conversion of certain merchandise. The cause was tried by the lower court without a jury, and, from a judgment in favor of defendant, plaintiffs appeal.

The gist of the complaint is that on July 27, 1907, the plaintiffs, under a lease dated August 2, 1906, three years of the term of which were unexpired, were in possession of a certain store building at No. 147 Second Street, Portland, Oregon, all rents due thereon having been paid; that they were carrying on a wholesale and retail merchandise business at such place, the good will of which was of the value of $7,000; that defendant, Cornelia Burkhart, wrongfully and unlawfully caused the entrance to plaintiffs' store to be barricaded, precluding plaintiffs from carrying on their business, and that on or about August 5th, through her agents and servants, she wrongfully, and unlawfully, and maliciously, without the consent and against the protest of plaintiffs, broke into the said store building and took possession thereof, together with plaintiffs' personal property therein, particularly described in the complaint. That thereafter defendant did unlawfully, and wrongfully, and maliciously "take and carry away and convert to her own use all of said personal property, goods, wares, and merchandise, * * of the reasonable value of $70,419.73, from the said building, No. 147 Second Street, and from the possession of the plaintiffs, and ever since has held and does still hold and retain possession thereof from the plaintiffs, to their damages in the sum of $70,419.73." As a separate cause of action, which has been abandoned, plaintiffs allege in detail that defendant unlawfully and wrongfully and maliciously caused the said storeroom and store building to be demolished and destroyed, to their damage in the sum of $5,000. Defendant, by her answer, denies the material allegations of the complaint as to the first cause of action, and in answer to the second cause sets forth the acts of the officers of the city, concerning the building, and her connection therewith, which are denied by the reply.

From the findings of facts made by the trial court, upon which plaintiffs rely for judgment in their favor, it appears that on August 14, 1907, the plaintiffs were, and for many years had been, partners, conducting a Chinese mercantile business in the brick building described; that, on account of the dangerous condition of the building, about July 27, 1907, the Portland building inspector, acting under a city ordinance, served notice on the owner, defendant, Cornelia Burkhart, and the plaintiffs, to remove the same within five days. No action was taken by the city council, condemning the building as unsafe or a nuisance, and the plaintiffs, the owners and in possession of goods, wares, and merchandise in the building, of the total value of $40,000, challenged the right of the inspector to make such an order, refusing to vacate the building, or to remove their stock of merchandise therefrom. Subsequently defendant, Burkhart, requested them to remove their goods, so that, in obedience to the notice from the inspector, the building could be torn down, but they persisted in their refusal so to do, and about August 14th defendant entered the store, or caused it to be entered, and took into her possession, and out of the possession of plaintiffs, the merchandise in question, and had the whole thereof transferred to the warehouse of the Oregon Auto Despatch Company, where the defendant caused the same to be stored.

Upon receiving the goods, the Oregon Auto Despatch Company delivered to defendant, Burkhart, its warehouse receipt therefor, the substance of which is as follows:

"Oregon Auto Despatch, Successor to Wakeman & Morse Transfer Company:

"Moving, packing and shipping. Duplicate. Warehouse 43 1st. Portland, Oregon, August 14, 1907. Received in store from Mrs. Cornelia Burkhart, Act. Hung Shun Co., pkgs. No. 1 to 212 matts rice, pkgs. No. 1 to 634 Chinese mdse. store fixts. etc. (Miscellaneous.) Cash $26.06. Received for the account of Mrs. Cornelia Burkhart the

goods enumerated in the above schedule for storage upon the following terms and conditions."

Here follow several printed provisions of the receipt, not deemed material in this opinion, ending as follows:

"This warehouse receipt and a written order shall be presented when any goods are to be withdrawn. Goods will be delivered only upon receipt of a written order signed by the person in whose name they are stored. One day's notice is required for access to or delivery of goods. A labor charge will be made for packing and repacking. (This warehouse receipt must be returned when all goods enumerated in the schedule are withdrawn.) Notice.—No goods delivered except on production, delivery and cancellation of warehouse receipt and payment of all charges. Rate of storage, $50.00 for each month or part of a month. Cartage in $.............. Packing $................ Charges advanced $.............. Moved in by ..................... Checked by..................... Received warehouse receipt.....................for above list of goods. Packed by.....................

"Signed......................................., Oregon Auto Despatch. Address........................., successor to Wakeman & Morse Transfer Co., by J. H. Coate."

A duplicate of this receipt defendant placed upon the desk of W. J. Makelim, then acting as plaintiffs' attorney, requesting that it be delivered to plaintiffs. The duplicate receipt was not at any time indorsed by defendant.

The court further found that, by reason of said taking and removal of merchandise, plaintiffs' entire business had been and is wholly destroyed; that the merchandise is still stored in the warehouse, neither defendant Burkhart nor the warehousemen having redelivered or offered to redeliver the same to plaintiffs; and as conclusions of law the trial court found, among other things, that the action of the building inspector, in pretending to condemn the building, was without authority of law, and void, for the reason that no action had been taken by the city council, condemning the building, and that the ordinance of the city, purporting to confer power upon the

inspector to condemn and order buildings destroyed, is void.

"That the action of the defendant, Cornelia Burkhart, in entering plaintiffs' said store * * and carrying away from the lawful possession of the plaintiffs the whole of said stock of merchandise, and causing the same to be transported· from said store to said warehouse in said city of Portland, Oregon, and in causing the same to be stored in said warehouse and subjected to certain liens for the cost and expense of its transportation from said store to said warehouse, and to a further lien of $50 per month for the storage of said merchandise so long as the same should remain therein, was unlawful and wrongful; but that said actions of said defendant, Cornelia Burkhart, did not and do not constitute a conversion of said goods by said defendant, and that said defendant is entitled to have the complaint herein dismissed, and to recover her costs and disbursements incurred in said action."                                    AFFIRMED.

For appellants there was a brief over the names of *Messrs. Dolph, Mallory, Simon & Gearin,* with oral arguments by *Mr. Rufus Mallory* and *Mr. John M. Gearin.*

For respondent there was a brief over the names of *Messrs. Cake & Cake,* with an oral argument by *Mr. William M. Cake.*

MR. JUSTICE BEAN delivered the opinion of the court.

Plaintiffs assign error of the court in holding as a conclusion of law that, upon the facts found and stated, the acts of defendant did not constitute a conversion of the goods, and that plaintiffs' complaint should be dismissed. Before the court made or filed its findings, plaintiffs requested it to find, as part of its conclusions of law, that defendant was guilty of conversion of the goods, and that they were entitled to judgment for the value thereof. The findings of fact made by the trial court stand in the place of the verdict of a jury. Plaintiffs contend that these findings show that the property in controversy was wrong-

fully and unlawfully taken from their possession, without their consent and against their protests, and has never been returned or tendered, but is held in pursuance of defendant's orders and directions, and subject to her control, without color of right, out of the possession, control, or dominion of plaintiffs, and that this is a conversion.

1. The findings of facts and conclusions of law of the lower court are the basis of this appeal, and upon the facts so found the question is raised squarely as to whether or not they constitute a conversion of the property, and entitle plaintiffs to recover from defendant. Upon this point the trial court found that the defendant, "without the consent and against the protest of the plaintiffs, seized and took into her possession, and out of the possession of the plaintiffs, the whole and every part of said merchandise, and carried the same away from said building and from plaintiffs' possession," and that while so in possession of said merchandise defendant, without the permission or consent and against the protest of plaintiffs, caused said merchandise to be stored in a certain warehouse on account of Hung Sun & Co., plaintiffs, taking a warehouse receipt therefor, a duplicate of which was left at the office of one of the attorneys for plaintiffs with the request that it be delivered to them.

"A conversion, in the sense of the law of trover, consists either in the appropriation of the thing to the party's own use and beneficial enjoyment, or in its destruction, or in exercising dominion over it, in exclusion or defiance of the plaintiff's right, or in withholding the possession from the plaintiff, under a claim of title, inconsistent with his own." 2 Greenleaf, Evidence, § 642.

Lord HOLT, in *Baldwin* v. *Cole,* 6 Mod. 212, defines a conversion as "the assuming upon oneself the property in and right of disposing of another's goods." *Tinker* v. *Morrill,* 39 Vt. 477, 480 (94 Am. Dec. 345). A conversion is defined by this court in *Ramsby* v. *Beezley,* 11 Or. 49

(8 Pac. 288), and quoted by Mr. Justice BEAN in *Walker*
v. *First National Bank,* 43 Or. 102, 104 (72 Pac. 635),
as "any distinct act of dominion wrongfully exerted over
one's property in denial of his right, or inconsistent with
it."

"Trespass lies for any wrongful force, but the wrong-
ful force is no conversion where it is employed in recogni-
tion of the owner's right, and with no purpose to deprive
him of his right temporarily or permanently."    Cooley,
Torts (3 ed.) 847.

The testimony in the case is not before this court, and
as to the facts we notice only the findings made by the
trial court in the light of pleadings, from which it does
not appear that the defendant asserted any title to the
property or claimed any right thereto, and her temporary
possession thereof was not inconsistent with the right of
plaintiffs, whose ownership, it appears, she at all times
recognized.    As we understand the findings of the trial
court, her act in storing the property was for its pro-
tection, and in full recognition of plaintiffs' rights therein.
Any assertion to the contrary is negatived by her symbolic
delivery of the chattels in surrendering the warehouse
receipt therefor to plaintiffs' attorney, which receipt, so
far as shown by the record, and in accordance with our
understanding of the argument of counsel, has ever since
been retained by plaintiffs.    Much is claimed in the argu-
ment from the fact that when the warehouse receipt was
delivered to plaintiffs' attorney it was not indorsed by
defendant.    After a careful examination of the language
of the receipt, we are of the opinion that this was
unnecessary.    If an indorsement were necessary, the
proper persons to make it would be the plaintiffs, Hung
Sun & Co.    We see no more reason for such a requirement
from defendant than from any drayman or teamster,
hauling and storing goods in a warehouse for the owner.
Had the plaintiffs attempted or desired to care for the

goods, and the indorsement of defendant required by any one interested, this question would then be material.

2. It is not necessary to a conversion that there should be a manual taking of the thing in question. Cooley, Torts (2 ed.) 524. Neither is every manual taking of the personal property of another a conversion.

"A conversion of property is an act of malfeasance, not of mere nonfeasance; a positive wrong, and not the mere omission of what was right. The manner in which possession of the property was acquired by the defendant in an action of trover may be material with regard to the evidence of a conversion. \* \*" *Schroeppel* v. *Corning,* 5 Denio (N. Y.) 236, 240.

Lord MANSFIELD defines the action of trover to be a remedy "to recover the value of personal chattels wrongfully converted by another to his own use." While in 8 Words & Phrases, 7111 (citing *Waring* v. *Pa. R. R. Co.,* 76 Pa. 491, 496), this definition appears:

"The taking may have been lawful; hence the gist of the action lies in the wrongful conversion. Where one has the lawful possession of the goods of another, and has not converted them, this action will not lie until there has been a refusal to deliver them on demand made."

See, also, *Boulden* v. *Gough,* 4 Pennewill (Del.) 48, (54 Atl. 693).

"A conversion is the gist of the action, and without conversion neither possession of the property, negligence, nor misfortune will enable the action to be maintained." 8 Words & Phrases, 7112.

In order to maintain an action for conversion, there must have been, on the part of the defendant, some unlawful assumption of dominion over the personal property involved, in defiance or exclusion of the plaintiffs' rights, or else a withholding of the possession from the plaintiffs, under a claim of right or title inconsistent with that of the plaintiffs. *Thweat* v. *Stamps,* 67 Ala. 96, 98; *France* v. *Gibson,* 101 S. W. (Tex. Civ. App.) 536; *Swank* v.

*Elwert,* 55 Or. 487 (105 Pac. 901). In *Shea* v. *Inhabitants of Milford,* 145 Mass. 525, 527 (14 N. E. 769), where the plaintiff was requested and refused to remove his property from the defendants' land, and such removal was made by the latter, the evidence negatived a conversion by the defendants, showing that they claimed no title and assumed no dominion, and did nothing in derogation of plaintiff's title thereto; that all that was done was in assertion of their right to the land, and in full recognition of plaintiff's right of property in the chattels. If plaintiff had the right to occupy the land claimed, then the defendants' act was wrongful, and they were liable for damages for breach of contract or for trespass, but not for the value of the property; citing *Farnsworth* v. *Lowery,* 134 Mass. 512; *Fouldes* v. *Willoughby,* 8 M. & W. 540; *Heald* v. *Carey,* 11 C. B. 977. Referring, also, to *Browder* v. *Phinney,* 37 Wash. 70, 74, 75 (79 Pac. 598), a controversy regarding a lease, where the defendant attempted to remove the merchandise of the plaintiff from his building to another place of business of the plaintiff and the latter's partner, which he refused to permit, and subsequently defendant caused the goods to be stored in plaintiff's name in a warehouse, it was held there was no conversion; citing *Sparks* v. *Purdy,* 11 Mo. 219, in which the court remarks:

"The bare removing of one's chattel from one spot to another, without denying his ownership, but, on the contrary, acknowledging it, cannot be conversion. It is neither a deprivation of the owner's right, nor is it use, enjoyment, change, or destruction of the property."

In *Adams* v. *Weir & Flagg,* 99 S. W. (Tex.) 726, where the tenant refused to remove the fixtures from a building formerly occupied by him, and the same were removed and stored by the defendants, the court held that the facts did not show a conversion; there being no intention on the part of defendants to take possession of the property. It is said in *Fouldes* v. *Willoughby,* 8 M. & W. 540:

"It has never yet been held that the single act or removal of a chattel, independent of any claim over it, either in favor of the party himself or any one else, amounts to a conversion of the chattel."

See, also, 8 Words & Phrases, 7112.

3. In the case under consideration, the findings of fact do not show that defendant *wrongfully* took the property of plaintiffs, asserted any title or claim thereto, or in any way attempted to claim or obtain any benefit therefrom, either for herself or for any one else. It would appear from the whole transaction that the action of defendant regarding the property was merely an assertion of her claim of right to render to the municipal officers of Portland assistance, by vacating the building and preparing it to be taken down in obedience to their command, the authority for which defendant appears not to have questioned (*Dunn* v. *Mellon,* 147 Pa. 11, 16: 23 Atl. 210: 30 Am. St. Rep. 706) ; and that this was done in full recognition of plaintiffs' ownership and right of possession, and in no way in denial or repudiation of their right or title. There was an entire lack of hostility on the part of defendant to plaintiffs' ownership and right of possession to the goods. Mr. Justice FIELDS, after an elaborate discussion of the question in *Spooner* v. *Manchester,* 133 Mass. 270, at page 274 (43 Am. Rep. 514), says : "Whether an act involving the temporary use, control, or detention of property implies an assertion of a right of dominion over it may well depend upon the circumstances of the case and the intention of the person dealing with the property"—citing *Fouldes* v. *Willoughby,* 8 M. & W. 540 ; *Wilson* v. *McLaughlin,* 107 Mass. 587 ; *Nelson* v. *Merriam,* 4 Pick. (Mass.) 249 ; *Houghton* v. *Butler,* 4 T. R. 364 ; *Heald* v. *Carey,* 11 C. B. 977.

4. In an action of trover it is not sufficient that the facts show a mere trespass, without showing a conversion. 21 Ency. Pl. & Pr. 1081. There may be a wrongful tak-

ing or carrying away of chattels, and still not be a conversion. A wrongful taking and carrying away of chattels is merely evidence of conversion. The goods may have been restored to the owner: *Bernstein* v. *Warland,* 33 Misc. Rep. 280 (67 N. Y. Supp. 444). There may be an actual, wrongful exercise of dominion over chattels without constituting a conversion, if such dominion is not a denial or repudiation of the owner's right or title. 28 Am. & Eng. Ency. Law (2 ed.) 681. We conclude that the facts, as found by the trial court, do not amount to a conversion of plaintiff's property, and there was no error in its decision to this effect.

5, 6. Counsel for plaintiffs in their brief further contend that, if the trial court was correct in its conclusion that there was no conversion of the goods, "the plaintiffs are still entitled to judgment for whatever damages the facts stated and the proof and findings of the court show they have sustained by reason of those acts." This in view of Section 1, L. O. L., which reads as follows:

"The distinction heretofore existing between forms of actions at law is abolished, and hereafter there shall be but one form of action at law, for the enforcement of private rights or the redress of private wrongs."

In actions in the nature of trespass or case for misfeasance, the plaintiff recovers only the damages suffered by reason of the wrongful acts of the defendant. In actions in the nature of trover, the general rule of damages is the value of the property at the time of the conversion, diminished, when the property has been returned to and received by the owner, by the value of the property at the time it was returned: *Austin* v. *Vanderbilt,* 48 Or. 206 (85 Pac. 519: 6 L. R. A. (N. S.) 298: 120 Am. St. Rep. 800) ; *Gove* v. *Watson,* 61 N. H. 136; *Spooner* v. *Manchester,* 133 Mass. 270, 272.

7. In the absence from the record of the testimony, it would be unfruitful for this court to pass upon the ques-

tion of trespass by defendant, for the reason that the trial court did not find or assess any actual damages, and there is no basis upon which a judgment for such damages could be founded. From the record brought here, the case appears to have been tried upon the theory that the defendant was liable for the wrongful conversion of the merchandise, but without the evidence this court cannot presume error in the failure of the lower court to award plaintiffs judgment for damages for trespass.

It follows that the judgment of the lower court must be affirmed, and it is so ordered.     AFFIRMED.