SULLIVAN v. NEW YORK TELEPHONE CO. et al.

(Supreme Court, Appellate Division, First Department. July 10, 1913.)

1. NEGLIGENCE (§ 32*)—DANGEROUS PREMISES—CARE REQUIRED.

An owner who procures the installation on his premises of a public telephone pay station, and is interested in the profits, must in inviting and permitting patrons to use the telephones exercise reasonable care to maintain his premises in a reasonably safe condition, and is liable for injuries to a patron resulting from his negligence.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 42–44; Dec. Dig. § 32.*]

2. NEGLIGENCE (§ 54*)—PUBLIC TELEPHONE STATIONS—DANGEROUS PREMISES —LIABILITY.

A telephone company which installs on the premises of an individual a public pay station pursuant to a contract stipulating for a division of the tolls collected, and which declares that the telephones furnished shall remain the property of the company, and are leased by it for the uses specifically allowed, is not liable for injuries to a patron falling into an open trapdoor on the premises, where the trapdoor was open solely in conducting the business of the individual.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 66, 67; Dec. Dig. § 54.*]

Appeal from Trial Term, New York County.

Action by Mary E. Sullivan against the New York Telephone Company and Percy Barr, doing business as Barr & Co. From a judgment for plaintiff and from an order denying motions for new trial, defendants separately appeal. Affirmed as against defendant Barr, and reversed and complaint dismissed as against defendant company.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

Arnold W. Sherman, of New York City, for appellant New York Telephone Co.

David V. Cahill, of New York City, for appellant Percy Barr.

Abraham Benedict, of New York City (Charles S. Guggenheimer, of New York City, on the brief), for respondent.

LAUGHLIN, J. On the 29th day of December, 1910, the plaintiff while passing along Forty-Second street observed the usual "Blue-Bell" sign so called for a public telephone in the window on the street or ground floor of premises known as No. 3 East Forty-Second street in the borough of Manhattan, New York, occupied by the defendant Barr as a shoe store, and she entered for the purpose of telephoning, and was directed by Barr to the telephone, and after using it, and while passing toward the desk of the cashier to pay the charges, she stepped into an opening in the floor, within a few feet of the telephone, caused by one of Barr's employés lifting a trapdoor, which had been constructed in the floor some two years after the telephone was installed, leading to the basement, while she was using the telephone, and she sustained injuries for which she has recovered against both defendants. There is a conflict in the evidence bearing on the negligence of the defendant Barr, and there may be said to be a conflict in the evidence with respect to the existence of proper care by the plaintiff.

The testimony of the plaintiff tends to show that in going to the telephone she passed over or in the vicinity of the trapdoor, and that there was no visible evidence of danger, that she was not aware of the fact that the trapdoor was opened while she was at the telephone, and that she did not observe it before stepping into it. On the part of the defendant Barr testimony was given tending to show that an announcement was made in her presence and hearing that the trapdoor was about to be opened, and that the opening was plainly visible from the position she occupied, and that she would have seen it had she exercised ordinary care. The evidence on those issues presented fair questions of fact for the consideration of the jury, and we think an appellate court would not be justified in ruling that it does not preponderate in favor of the plaintiff. The telephone was installed pursuant to a request in writing made by the defendant Barr, therein designated as "the subscriber," which was accepted by the company on the 31st day of January, 1906. The subscriber thereby requested, in effect, that the company establish at his store "a public telephone pay station" and maintain the same and the wires connecting it with the company's exchange, and furnish service to him for the period of six months from the first day of the month following the connection of the station and thereafter until the contract should be terminated as therein provided; and he agreed to pay to the company 80 per cent. of all tolls charged by it for messages from said station, with the proviso that his proportion of the toll on any message should not exceed five cents. The request for the installation of the telephone was evidently made on a blank provided by the company. The terms of the

request indicate that it was contemplated that the company should keep an account of the messages sent from said station and render monthly statements thereof, and that the tolls collected by the subscriber should be at rates established by the company, and that he should conspicuously display such sign or signs as the company might furnish; that all signs, booths, or other equipment furnished by the company should remain its property, and should be returned to it whenever requested in as good order as reasonable wear and tear would permit; that the company should have access thereto at all reasonable hours for the purpose of inspecting, repairing, and removing the line, instruments, or other equipment, and that either party might terminate the contract at any time after the expiration of six months on serving 10 days' previous notice in writing. The printed conditions annexed to the request made by the subscriber recite that the telephones to be furnished are the property of the American Bell Telephone Company, and are to be constructed and used under its patents, and are leased and licensed by said company for the use therein specifically allowed, and that the subscriber was to pay $5 for each telephone destroyed otherwise than by unavoidable accident, and $10 per month in case a telephone should be removed or detained without authority until its destruction or loss without his fault should be satisfactorily proved.

[1] It follows from these provisions that the defendant Barr had a direct interest in the use of the telephone, and had possession thereof as lessee or bailee. It was his duty, therefore, in inviting and permitting patrons to use the telephones, to exercise reasonable care to maintain his premises in a reasonably safe condition. Clussman v. Long Island R. R. Co., 9 Hun, 618, affirmed 73 N. Y. 606. The evidence fairly shows that he was guilty of a breach of this duty, and the jury therefore properly found that he was guilty of negligence and liable to the plaintiff.

[2] There is, however, no basis for the recovery against the Telephone Company. It was not in possession of the premises (see Clussman v. Long Island R. R. Co., supra); and, although it shared with the defendant Barr in the profits arising from *the use of the telephone,* it was in no manner interested with him *in the use of the premises,* which were in his exclusive possession, with the exception that the company reserved the rght of access to the telephone for the purpose of repairs or removal. The trapdoor was not opened in connection with *the use of the telephone* or in the business of furnishing telephone accommodations to the public, in which Barr and the company were jointly interested. It was opened solely in conducting the business of the defendant Barr as a dealer in shoes by one of his employés to obtain access to the basement, where shoes were stored with a view to exhibiting stock therein stored to a customer.

In Clussman v. Long Island R. R. Co., supra, where a passenger was injured by a defective platform over which he was passing to a telegraph office which was maintained jointly by the telegraph company and the railroad company, which makes the case quite analogous to this, the court at General Term, on holding the railroad company lia-

ble, expressed the opinion that the telegraph company was under no obligation to keep the station in repair.

In Thomas v. Springer, 134 App. Div. 640, 119 N. Y. Supp. 460, where a person attending a theater owned by the defendant, but leased to a theatrical company for the evening for a percentage of the gross receipts, was injured by an object dropped from a balcony by one who was in the employ of the defendant generally but who was paid for his services that evening by the theatrical company, it was held that the percentage of the receipts received by the owner was not received as a share of profits for his contribution to a joint enterprise, but as compensation for the use of the theater and that the defendant and the theatrical company were neither copartners nor joint adventurers, although he advertised himself as manager and proprietor of the theater, and retained possession thereof, and invited the public to attend and had charge of the selling of tickets of admission.

In Laguttuta v. Chisholm, 65 App. Div. 326, 72 N. Y. Supp. 905, where the plaintiff was bitten by a watch dog owned and maintained by the defendant Wilson upon premises owned by the defendant Chisholm, who had made an arrangement with Wilson by which the latter should rent the yard and stalls in stables on the premises, and, after deducting 30 per cent. of the proceeds for his services, was obligated to pay the balance to Chisholm, this court held that Wilson was managing the property for himself, and that the proportion of the receipts paid to Chisholm represented compensation for the use of his property, and that Chisholm was not liable for Wilson's acts.

No authoritative precedent precisely in point has been found; but we are of opinion that as matter of law the telephone company is not liable and the three decisions, which we have considered briefly, are somewhat analogous and tend to support this view.

At the close of the plaintiff's case counsel for the Telephone Company moved to dismiss the complaint on the ground, among others, that it was not shown guilty of negligence, and duly excepted to the refusal of the court to grant the motion. It then withdrew from the case without introducing any evidence until the submission to the jury in which it took part.

We are of opinion that the court erred in denying the motion for the dismissal of the complaint as to the defendant Telephone Company, and therefore, pursuant to the provisions of section 1317 of the Code of Civil Procedure, the judgment and order are reversed, with costs as to it, and judgment dismissing the complaint with costs is ordered on the motion of the defendant company for that relief on the trial, and the judgment and order are affirmed, with costs as against the defendant Barr. All concur.